FILED

2012 SEP 21  PM 3:39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>VICTORIA N. ONYEABOR,<br>GODWIN ONYEABOR,<br>DR. SRI J. WIJEGUNARATNE,<br>     aka "Dr. J," and<br>HEIDI MORISHITA,<br><br>            Defendants. | CR No. 12 00905<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2: Causing an Act to be Done; 18 U.S.C. § 371: Conspiracy to Pay and Receive Health Care Kickbacks in Violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and (2)(A)] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.    INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Conspirators

1.    Defendant VICTORIA N. ONYEABOR ("V. ONYEABOR") was the President, Chief Executive Officer, and Registered Agent for Fendih Medical Supply Inc. ("Fendih"), a supplier of durable

1   medical equipment ("DME"), primarily power wheelchairs ("PWCs"),

2   located in San Bernadino, California.

3      2.    Defendant GODWIN ONYEABOR ("G. ONYEABOR") was the

4   Secretary of Fendih.  Among his duties, defendant G. ONYEABOR

5   delivered PWCs for Fendih.

6      3.    Defendant DR. SRI J. WIJEGUNARATNE, also known as

7   ("aka") "Dr. J", was a physician licensed to practice medicine in

8   the State of California.  Defendant WIJEGUNARATNE wrote medically

9   unnecessary PWC prescriptions and sold them to Fendih.

10      4.    Defendant HEIDI MORISHITA ("MORISHITA") obtained

11   medically unnecessary PWC prescriptions and sold them to Fendih.

12      5.    On or about September 20, 2005, defendant V. ONYEABOR

13   registered as the sole Incorporator and Registered Agent of

14   Fendih in State of California records.

15      6.    In or around October 2005, defendant V. ONYEABOR opened

16   a corporate bank account for Fendih at Wells Fargo Bank, account

17   number xxxxxx8370.  Defendant V. ONYEABOR maintained sole

18   signature authority on this account.

19      7.    On or about May 22, 2006, defendant V. ONYEABOR

20   executed and submitted an application to Medicare to obtain and

21   maintain a Medicare provider number for Fendih.

22      8.    On or about March 15, 2007, defendant V. ONYEABOR

23   executed and submitted an electronic funds transfer agreement

24   ("EFT") to Medicare, requesting that all future reimbursements

25   from Medicare be directly deposited into Fendih's Wells Fargo

26   corporate account.

27      9.    On or about January 23, 2009, defendant V. ONYEABOR

28   opened a second corporate bank account for Fendih at Citibank,

account number xxxxx4256.  Defendant V. ONYEABOR maintained sole
signature authority on this account.

    10.    On or about February 3, 2009, defendant V. ONYEABOR
executed and submitted an amended EFT agreement to Medicare,
requesting that all future reimbursements from Medicare be
directly deposited into Fendih's Citibank corporate account.

    11.    Between on or about January 9, 2007, and on or about
February 18, 2012, Fendih submitted to Medicare claims totaling
approximately $1,498,155 for purported PWCs and related services,
and Medicare paid Fendih approximately $978,818 on those claims.

The Medicare Program

    12.    Medicare was a federal health care benefit program,
affecting commerce, that provided benefits to individuals who
were over the age of 65 or disabled.  Medicare was administered
by the Centers for Medicare and Medicaid Services ("CMS"), a
federal agency under the United States Department of Health and
Human Services ("HHS").

    13.    CMS contracted with private insurance companies to (a)
certify DME providers for participation in the Medicare program
and monitor their compliance with Medicare standards; (b) process
and pay claims; and (c) perform program safeguard functions, such
as identifying and reviewing suspect claims.

    14.    Individuals who qualified for Medicare benefits were
referred to as Medicare "beneficiaries."  Each Medicare
beneficiary was given a Health Identification Card containing a
unique identification number ("HICN").

3

15.   DME companies, physicians, and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

16.   To obtain payment from Medicare, a DME company first had to apply for and obtain a provider number.  By signing the provider application, the DME company agreed to abide by Medicare rules and regulations.

17.   If Medicare approved a provider's application, Medicare would assign the provider a Medicare provider number, enabling the provider (such as a DME company) to submit claims to Medicare for services and supplies provided to Medicare beneficiaries.

18.   To obtain and maintain their Medicare provider number billing privileges, DME suppliers had to meet Medicare standards for participation.  The Medicare contractor responsible for evaluating and certifying DME providers' compliance with these standards was Palmetto GBA ("Palmetto").

19.   From in or about October 2006 through the date of this Indictment, Noridian Administrative Services ("Noridian") processed and paid Medicare DME claims in Southern California.

20.   Most DME providers, including Fendih, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

21.   Medicare paid DME providers only for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines

4

1   that governed whether a particular item or service would be paid

2   by Medicare.

3        22.   To bill Medicare for DME it provided to a beneficiary,

4   a DME provider was required to submit a claim (Form 1500).

5   Medicare required claims to be truthful, complete, and not

6   misleading.   In addition, when a claim was submitted, the

7   provider was required to certify that the services or supplies

8   covered by the claim were medically necessary.

9        23.   Medicare required a claim for payment to set forth,

10   among other things, the beneficiary's name and HICN, the type of

11   DME provided to the beneficiary, the date the DME was provided,

12   and the name and unique physician identification number ("UPIN")

13   or national provider identifier ("NPI") of the physician who

14   prescribed or ordered the DME.

15        24.   Medicare had a co-payment requirement for DME.

16   Medicare reimbursed providers 80% of the allowed amount of a DME

17   claim and the beneficiary was ordinarily obligated to pay the

18   remaining 20%.

19   B.    THE OBJECT OF THE CONSPIRACY

20        25.   Beginning on or about January 9, 2007, and continuing

21   through on or about February 18, 2012, in San Bernardino County,

22   within the Central District of California, and elsewhere,

23   defendants V. ONYEABOR, G. ONYEABOR, and WIJEGUNARATNE, together

24   with others known and unknown to the Grand Jury, knowingly

25   combined, conspired, and agreed to commit health care fraud, in

26   violation of Title 18, United States Code, Section 1347.

27

28

C.   THE MANNER AND MEANS OF THE CONSPIRACY

    26.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

        a.   Defendants V. ONYEABOR and G. ONYEABOR paid individuals, including defendants WIJEGUNARATNE and MORISHITA, for medically unnecessary PWC prescriptions for the purpose of using those prescriptions to submit, and cause the submission of, false and fraudulent claims to Medicare on behalf of Fendih.

        b.   After acquiring the false and fraudulent PWC prescriptions, defendant V. ONYEABOR and her co-conspirators would submit, and cause the submission of, false and fraudulent claims to Medicare for PWCs and related accessories that were purportedly provided by Fendih to Medicare beneficiaries.

        c.   As a result of the submission of false and fraudulent claims, Medicare made payments to Fendih's corporate bank accounts at Wells Fargo and Citibank.

        d.   Defendant V. ONYEABOR then transferred and disbursed, and caused the transfer and disbursement of, monies from Fendih'S corporate bank accounts to herself and to defendants G. ONYEABOR and MORISHITA.   Defendant V. ONYEABOR also transferred and disbursed, and caused the transfer and disbursement of, cash payments to defendants WIJEGUNARATNE and MORISHITA from Medicare proceeds.

COUNTS TWO THROUGH NINE

[18 U.S.C. §§ 1347 and 2(b)]

A.    INTRODUCTORY ALLEGATIONS

27.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 24 above of this Indictment as though set forth in their entirety here.

B.    THE SCHEME TO DEFRAUD

28.   Beginning on or about January 9, 2007, and continuing through on or about February 18, 2012, in San Bernardino County, within the Central District of California, and elsewhere, the defendants referenced below, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.    MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

29.   The fraudulent scheme operated, in substance, as described in paragraph 26 above of this Indictment, which is hereby incorporated by reference as though set forth in its entirety here.

D.    THE EXECUTION OF THE FRAUDULENT SCHEME

30.   On or about the dates set forth below, within the Central District of California and elsewhere, the defendants

7

referenced below, together with others known and unknown to the
Grand Jury, for the purpose of executing and attempting to
execute the fraudulent scheme described above, knowingly and
willfully caused to be submitted to Medicare for payment the
following false and fraudulent claims purportedly for power
wheelchairs and related accessories:

| COUNT | DEF | BENE-FICIARY | CLAIM NUMBER | DATED BILLED TO MEDICARE | AMOUNT BILLED TO MEDICARE |
|-------|-----|--------------|--------------|--------------------------|---------------------------|
| TWO | V. ONYEABOR and G. ONYEABOR | M.S. | 108031816780 000 | 01/30/08 | $4,500 |
| THREE | V. ONYEABOR and G. ONYEABOR | J.V.T. | 108032848386 000 | 01/30/08 | $4,500 |
| FOUR | V. ONYEABOR and G. ONYEABOR | V.B. | 109127804663 000 | 05/05/09 | $4,500 |
| FIVE | V. ONYEABOR and G. ONYEABOR | C.U. | 109177805972 000 | 06/25/09 | $4,500 |
| SIX | V. ONYEABOR and G. ONYEABOR | C.T. | 109229812863 000 | 08/15/09 | $4,500 |
| SEVEN | V. ONYEABOR G. ONYEABOR and WIJEGUN-ARATNE | M.P. | 111088476380 00 | 04/20/11 | $2,800 |
| EIGHT | V. ONYEABOR G. ONYEABOR and WIJEGUN-ARATNE | W.W. | 111158413470 00 | 04/23/11 | $2,800 |
| NINE | V. ONYEABOR G. ONYEABOR and WIJEGUN-ARATNE | R.L.V. | 111368330650 00 | 05/14/11 | $2,800 |

COUNT TEN

[18 U.S.C. §§ 371 and 2(b)]

A.   INTRODUCTORY ALLEGATIONS

31.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 24 above of this Indictment as though set forth in their entirety here.

B.   OBJECT OF THE CONSPIRACY

32.   Beginning at least as earlier as on or about March 12, 2009, and continuing through at least on or about February 18, 2012, in San Bernardino County, within the Central District of California, and elsewhere, defendants V. ONYEABOR, G. ONYEABOR, WIJEGUNARATNE, and MORISHITA, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to pay and receive kickbacks for patient referrals, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and (2)(A).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

33.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.   Defendant V. ONYEABOR would maintain a valid Medicare provider number for Fendih in order to submit claims to Medicare for DME.

b.   Defendant WIJEGUNARATNE would provide DME prescriptions to Fendih.

c.   Defendant MORISHITA would provide DME prescriptions to Fendih.

        d.   Defendants V. ONYEABOR and G. ONYEABOR would pay,
and cause to be paid, kickbacks to defendants WIJEGUNARATNE and
MORISHITA in return for DME prescriptions that Fendih would use
to submit claims to Medicare.

C.   OVERT ACTS

    34.   In furtherance of the conspiracy and to accomplish its
object, defendants V. ONYEABOR, G. ONYEABOR, WIJEGUNARATNE, and
MORISHITA, together with others known and unknown to the Grand
Jury, committed and wilfully caused other to commit the following
overt acts, among others, within the Central District of
California and elsewhere:

    Overt Act No. 1: On or about May 16, 2009, defendants V.
ONYEABOR and G. ONYEABOR paid and caused to be paid $3,000 to
defendant MORISHITA.  This check, which was drawn upon Fendih's
Citibank account number xxxxx4256 (check number #576),
represented kickbacks for DME prescriptions provided by defendant
MORISHITA to Fendih.

    Overt Act No. 2: On or about June 19, 2009, defendants V.
ONYEABOR and G. ONYEABOR paid and caused to be paid $2,000 to
defendant MORISHITA.  This check, which was drawn upon Fendih's
Citibank account number xxxxx4256 (check number #604),
represented kickbacks for DME prescriptions provided by defendant
MORISHITA to Fendih.

    Overt Act No. 3: On or about July 24, 2009, defendants V.
ONYEABOR and G. ONYEABOR paid and caused to be paid $3,000 to
defendant MORISHITA.  This check, which was drawn upon Fendih's
Citibank account number xxxxx4256 (check number #508),

1 | represented kickbacks for DME prescriptions provided by defendant

2 | MORISHITA to Fendih.

3 |     <u>Overt Act No. 4</u>: In or around March 2011, defendants V.

4 | ONYEABOR and G. ONYEABOR paid and caused to be paid cash

5 | kickbacks to defendant WIJEGUNARATNE for DME prescriptions

6 | provided by defendant WIJEGUNARATNE to Fendih.

7 |

8 |                               A TRUE BILL

9 |

10 |                             /S/

                            Foreperson

11 |

12 |

13 |

14 | ANDRÉ BIROTTE JR.
United States Attorney

15 |

16 | ROBERT E. DUGDALE
Assistant United States Attorney

17 | Chief, Criminal Division

18 | RICHARD E. ROBINSON
Assistant United States Attorney

19 | Chief, Major Frauds Section

20 | SAM SHELDON
Deputy Chief, Fraud Section

21 | United States Department of Justice

22 | CHARLES LA BELLA
Deputy Chief, Fraud Section

23 | United States Department of Justice

24 | O. BENTON CURTIS, III
Assistant Chief, Fraud Section

25 | United States Department of Justice

26 |

27 |

28 |